**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| HOSPICE OF EAST TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:23-CV-136-RWS-JBB |
| | § | |
| SECRETARY, UNITED STATES | § | |
| DEPARTMENT OF HEALTH AND | § | |
| HUMAN SERVICES, | § | |
| | § | |
| Defendant. | § | |

**<u>ORDER</u>**

Before the Court are Defendant Secretary of the U.S. Department of Health and Human Services's objections to the Magistrate Judge's Report and Recommendation. Docket No. 31 ("R&R"). Hospice of East Texas ("Hospice") filed this case seeking judicial review of a final decision by the Secretary that Hospice was overpaid by $959,659.96 in Medicare hospice benefits. Docket No. 1. The case was referred to United States Magistrate Judge J. Boone Baxter in accordance with 28 U.S.C. § 636.

**I.      Background**

This dispute concerns whether the Administrative Law Judge ("ALJ"), acting as an agent for the Secretary, properly reviewed Hospice's appeal at the third level of administrative review and whether her decision denying Hospice's claims was supported by substantial evidence and comports with the applicable legal standards.

Hospice alleges the ALJ's decision should be reversed because (1) "[t]he Decision is not supported by substantial evidence and is contrary to the overwhelming weight of the evidence;" (2) "[t]he ALJ failed to apply the correct legal standards governing clinical eligibility for hospice

services, thereby rendering a Decision that is contrary to law;" (3) "[t]he Decision did not address alleged technical deficiencies in the documentation raised by the underlying reviewer as a basis for denial;" and (4) "[t]he ALJ failed to limit or waive the Hospice's liability as required under Sections 1879 and 1870 of the Social Security Act." Docket No. 1 at ¶ 48.

Hospice filed a motion for summary judgment (Docket No. 16) requesting that the ALJ's decision be reversed and that Hospice be reimbursed for the services it provided. The Secretary in its cross-motion for summary judgment (Docket No. 19) requested that the ALJ's decision be affirmed. Specifically, the Secretary alleged that the ALJ's conclusions in the decision are supported by substantial evidence and are free from legal error and that Hospice failed to satisfy its burden to provide otherwise. Docket No. 19 at 49.

### A.    The Magistrate Judge's Report and Recommendation

On February 21, 2025, the Magistrate Judge issued a Report and Recommendation, recommending that Hospice's motion (Docket No. 16) be granted and the Secretary's motion (Docket No. 19) be denied. Docket No. 31 at 1. Finding that the ALJ's decision does not comport with applicable legal standards and was not supported by substantial evidence, the Magistrate Judge recommended that the final decision of the Secretary be vacated and remanded for reimbursement in the amounts previously recouped from Hospice for the claims for 10 beneficiaries billed under the Medicare Hospice Benefit between August 1, 2014 and June 30, 2017.

The R&R first set out the Medicare framework and an overview of the Medicare Hospice Benefit. R&R at 3–6. The R&R then set out the appeals process and the administrative procedural history of the current appeal. *Id.* at 6–11. After setting forth the applicable legal standards, *id.* at 13–16, 19–20, the Magistrate Judge summarized a hearing that took place before an ALJ on

October 18, October 19, and November 8, 2022. *Id.* at 20–22; *see also id*. at 10. Next, the Magistrate Judge summarized the ALJ's March 28, 2023 decision (Vol. I at 223–97) that upheld the denial of all 242 claims for 10 beneficiaries. In doing so, the Magistrate Judge provided a brief summary of the medical records and the ALJ's reasoning for each of the 10 beneficiaries. *Id.* at 22–34.

The Magistrate Judge then considered whether the ALJ's determinations of ineligibility comport with applicable legal standards and are supported by substantial evidence. *Id.* at 34–67. Although Hospice's appeal concerns claims for hospice services provided to 10 different beneficiaries, due to the similarities of Hospice's criticisms of the ALJ's analyses among those beneficiaries, the Magistrate Judge was able to globally analyze the ALJ's decision and use illustrative examples from specific beneficiaries where appropriate. *Id.* at 34–35 (noting the parties acknowledge the significant overlap in how they briefed the issues and indicate in their cross motions that the Court's analysis as to the issues presented will resolve all of the individual claims at issue).

The Magistrate Judge found the ALJ's decision as to eligibility erred in four ways, and thus, it does not comport with applicable legal standards and is not supported by substantial evidence:

> (1) the decision failed to properly consider all of the physicians' certifications and opinions, including the testimony provided by Hospice's expert, Dr. Laura Ferguson, at the ALJ hearing, in the context of the medical record; (2) by failing to properly consider the physicians' certifications and the uncontested expert testimony of Dr. Ferguson, the decision rendered unfounded medical opinions based on speculative lay opinion; (3) the decision failed to properly address the applicable Palmetto LCD guidelines; and (4) the decision referenced criteria from inapplicable LCD guidelines.

*Id.* at 35, 65. According to the Magistrate Judge, "[w]hile any one of these errors standing alone would not necessarily result in a recommendation of reversal, due to the combined nature of the

errors in this case, the undersigned concludes that the decision's determinations of ineligibility do not comport with applicable legal standards and are not supported by substantial evidence." *Id.* at 35.

The Magistrate Judge concluded that the ALJ's ultimate determination that the hospice services at issue were not "reasonable and necessary" under Medicare regulations was unsubstantiated. *Id*. at 65–66. Therefore, the Magistrate Judge recommended that Hospice's motion to reverse be granted and the Secretary's motion to affirm be denied. *Id*. at 66. While noting that Hospice clarified during oral argument that it is requesting a court order that Hospice be paid for the services it provided to the beneficiaries at issue, rather than a remand for further proceedings, the Magistrate Judge determined the case should be reversed and remanded "for reimbursement of Hospice by the Secretary for the amounts previously recouped from Hospice for the claims for ten beneficiaries billed under the Medicare Hospice Benefit between August 1, 2014, and June 30, 2017." *Id*. at 66–67 (citing *Cumerland Cnty. Hosp. Sys., Inc. v. Price*, No. 5:15-CV-317-D, 2017 WL 1047255, at *13 (E.D.N.C. Feb. 23, 2017), *report and recommendation adopted sub nom*., 2017 WL 1049474 (E.D.N.C. Mar. 17, 2017) ("Because the record shows that the care provided to S.T. by plaintiff was both reasonable and necessary and no contrary evidence has been identified in the record, the determination by the Secretary should be reversed and the case remanded for the payment of reimbursement to plaintiff."); also citing *Rivas v. Weinberger*, 475 F.2d 255, 259 (5th Cir. 1973) (reversing and rendering the Secretary's determination because it was not supported by substantial evidence)). This relief "seems particularly just here given the delay that has already occurred in this matter and the incontrovertible additional delay that would occur were the court to remand the matter for further proceedings in the Medicare appeals process." *Cumerland*, 2017 WL 1047255, at *13. The Magistrate Judge noted that even though the ALJ's

decision generated some conflicting evidence, it did so inappropriately by making unsupported medical opinions. Docket No. 31 at 67. Therefore, the Magistrate Judge found no legally sufficient contrary evidence in the record. *Id.*

According to the Magistrate Judge, this recommendation is further supported by the "alternative finding" that, even without considering the ALJ's ultimate determination that Medicare coverage requirements for the hospice services at issue were not met, Hospice is entitled to payment for any non-covered services pursuant to the limitation and waiver provisions of the Act. *Id.* at 67. Finding "the outcome of a new administrative proceeding is preordained" as explained in Section IV.D.5 of the R&R, the Magistrate Judge alternatively found that Hospice would be entitled to a limitation or waiver of recoupment as to the payment for any non-covered hospice services at issue. *Id.* at 75 (citing *Cent. Louisiana Home Health Care, L.L.C. v. Price*, No. 1:17-CV-00346, 2018 WL 7888523, at *25 (W.D. La. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1388773 (W.D. La. Mar. 27, 2019); also citing *Am. Train Dispatchers Ass'n v. I.C.C.*, 26 F.3d 1157, 1163 (D.C. Cir. 1994), *abrogated on other grounds by Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533 (D.C. Cir. 1999)). Therefore, the Magistrate Judge recommended the Court rule—in the alternative—that any overpayment sought by the Secretary because Hospice was unreasonable in assuming that the hospice services were covered is limited or waived under 42 U.S.C. §§ 1395pp and/or 1395gg. *See id.*; *see also Cypress Home Care, Inc. v. Azar*, 326 F. Supp. 3d 307, 318 (E.D. Tex. 2018).

The Secretary filed objections to the R&R. Docket No. 32. Hospice filed a response to the objections. Docket No. 34.

## II.    Legal Standards

### A.    Review of the Magistrate Judge's Report and Recommendation

The Court must conduct a *de novo* review of all portions of the Magistrate Judge's report that a party has properly objected to. *See* 28 U.S.C. § 636(b)(1)(C) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). As to any portion for which no objection is filed, the Court reviews for clearly erroneous factual findings and conclusions of law. *Poe v. Bock*, Civil Action No. EP-17-CV-00232-DCG, 2018 WL 4275839, at *2 (W.D. Tex. Sept. 7, 2018) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); also citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole.")).

### B.    Summary Judgment

Summary judgment is the preferred mechanism for resolving appeals of an administrative agency's final decisions. *Girling Health Care v. Shalala*, 85 F.3d 211, 214 (5th Cir. 1996). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc*., 209 F.3d 419, 424 (5th Cir. 2000).

### C.    Judicial Review of Medicare Appeals

Where, as here, the Medicare Appeals Council does not review the ALJ's decision, the ALJ's decision stands as the final decision of the Secretary. *Prime Healthcare Servs.-Montclair, L.L.C. v. Hargan*, No. CV 17-659 PA (JCX), 2018 WL 333862, at *5 (C.D. Cal. Jan. 9, 2018). Judicial review of such final decisions lies with this Court pursuant to 42 U.S.C. § 1395ff(b)(1)(A), which incorporates 42 U.S.C. § 405(g) and allows for judicial review of a final decision of the Secretary with respect to Medicare benefits. *Id.*; *see Angelitos Health Care, Inc. v. Becerra*, No. 7:20-CV-0035, 2022 WL 981966, at *6 n.9 (S.D. Tex. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 980705 (S.D. Tex. Mar. 31, 2022), *aff'd*, No. 22-40298, 2023 WL 2941459 (5th Cir. Apr. 13, 2023) (stating § 405(g) is made applicable in Medicare overpayment cases by statute); *see also D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 474 n.4 (5th Cir. 2022) (stating

§ 1395ff(b)(1)(A) incorporates § 405(g)). The court under § 405(g) "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary of HHS], with or without remanding the cause for a rehearing."

Under § 405(g), judicial review of the final decision of the Secretary is limited to considering (1) whether the Secretary's decision is supported by substantial evidence in the record and (2) whether the appropriate legal standards were applied. *Cumerland*, 2017 WL 1047255, at *4. The "findings of the [Secretary of HHS], if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla" or "such relevant evidence as a reasonable mind might accept to support a conclusion." *Angelitos*, 2022 WL 981966, at *6 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Secretary has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *Cumerland*, 2017 WL 1047255, at *5 (citing *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997)). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *Id.* (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)).

Certain aspects of the Secretary's decisions in § 405(g) cases may be reviewable under the Administrative Procedure Act ("APA") standard, however, which requires courts to determine if the agency's action was "arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with law, . . . [or] without observance of procedure required by law." *Agendia, Inc. v. Becerra*, No. CV 22-3242 (JDB), 2024 WL 3551877, at *5 (D.D.C. July 26, 2024) (quoting 5 U.S.C. § 706(2); also citing *Almy v. Sebelius*, 679 F.3d 297, 302 (4th Cir. 2012)). An action will not be considered arbitrary and capricious so long as "the agency has examined the relevant data

and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." *Almy*, 679 F.3d at 302 (citations omitted).

## III.    Analysis

### A.    The Secretary's Objections

The Secretary raises the following five objections to the R&R: (1) expert witness testimony is not evidence at Level 3 review; (2) the validity of Hospice's physician certifications was not addressed by the ALJ, and the Magistrate Judge erred by making conclusions regarding their validity; (3) the Magistrate Judge erred in applying CMS 93-1 to hospice review; (4) the Magistrate Judge erred by applying a burden-shifting framework not contemplated by Congress; and (5) the Magistrate Judge similarly crafted an alternate regime for waiver determinations and further erred by applying the APA to the alternate review of the ALJ's waiver determination. Docket No. 32.

Before considering each of the objections, the Court notes that the unobjected-to portions of the R&R are sufficient to adopt the R&R's recommendation that summary judgment be granted in Hospice's favor. The Secretary does not specifically object to important findings regarding the ALJ's determinations of ineligibility, including the findings that the decision failed to properly consider the applicable Palmetto LCD guidelines. *See* R&R at 56–63. Further, the Secretary does not object to the Magistrate Judge's finding that the decision referenced specific criteria from inapplicable CGS LCD guidelines. *Id.* at 63–65.

### B.    First Objection

In his first objection, the Secretary addresses the Magistrate Judge's conclusion that the ALJ "failed to properly consider expert physician opinions" (R&R at 35) and that "by failing to properly consider the uncontested medical expert testimony," the ALJ "rendered unfounded medical opinions based on her own speculative lay opinions." R&R at 52. The Secretary argues

that expert witness testimony at step three of the administrative process is not intended to further develop the factual record and that additional evidence can only be provided in the first and second steps of the administrative process. Docket No. 32 at 2 (citing *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 526 (5th Cir. 2020) (" 'provider of services or supplier may not introduce evidence' after step two 'unless there is good cause which precluded the introduction of such evidence at or before that reconsideration.' "); 42 U.S.C. § 1395ff(b)(3); 42 C.F.R. § 405.966(a)(2)). According to the Secretary, "[t]o the extent the Magistrate Judge concluded that Dr. Ferguson's testimony [during the step three ALJ hearing] was evidence the ALJ erroneously failed to consider, and [] the Magistrate further based his decision thereupon," the recommended grant of summary judgment in Hospice's favor was in error. *Id.*

The authorities that the Secretary cites are inapposite. As urged by Hospice, the regulation cited by the Secretary, 42 C.F.R. § 405.966(a)(2), relates to the *reconsideration* phase (step two) and "has nothing to do with what will be considered at the ALJ hearing [(step three)]." Docket No. 34 at 2. Step one of the "four-step administrative review process" is a "redetermination" by an HHS contractor, and step two involves "reconsideration" by a qualified independent contractor. *Med-Cert Home Care, L.L.C. v. Becerra*, 19 F.4th 828, 829 (5th Cir. 2021) (citations omitted). These first two steps are the only time the provider can submit paper evidence, absent "good cause." *Id.* (citing 42 U.S.C. § 1395ff(b)(3); 42 C.F.R. §§ 405.946(a), 405.966(a)(2)). According to the Fifth Circuit in *Med-Cert Home Care*, step three is an ALJ hearing which can include an in-person hearing and the chance to present oral testimony and cross-examination. *Id.* (citing 42 C.F.R. § 405.1036(c)–(d)).

The Secretary's reliance on *Sahara* is also misplaced. *Sahara* stands for the proposition that an appellant is not deprived of due process when the government begins recoupment **before**

**an ALJ hearing** because the appellant had an opportunity to be heard through developing the factual record at steps one and two. *Sahara*, 975 F.3d at 532. There was never an ALJ hearing held in *Sahara*—the provider had requested one and did not receive it. *Id.* at 525. In fact, the provider in *Sahara* had conceded that a third step "hearing [would] not develop [its] factual record" and could "not explain how the possibility of cross-examination at the hearing would benefit it." *Id.* at 531. This is different from this case, where a step three ALJ hearing was indeed held and oral testimony from Hospice's expert was presented.

The Fifth Circuit later clarified *Sahara*, making the permissibility of oral testimony explicit by stating that the "benefit of an in-person hearing during the third step of review [*i.e.*, ALJ hearing] is to allow the decisionmaker to make credibility determinations through the consideration of testimony and cross examination." *Fam. Rehab., Inc. v. Becerra*, 16 F.4th 1202, 1204 (5th Cir. 2021) (further explaining that the third step review does not allow a provider to supplement the record **beyond the submission of oral testimony** and the making of credibility determinations—neither of which is necessary to resolve documentary issues); *see also Med-Cert Home Care*, 19 F.4th at 829. Thus, contrary to the Secretary's suggestion otherwise, oral testimony is explicitly permitted at the ALJ hearing stage of appeal.

Here, during the ALJ hearing, Hospice presented Dr. Laura Ferguson, a board certified and fellowship trained palliative medicine physician and Hospice's Medical Director, to support its position. *See* R&R at 20. Based on Dr. Ferguson's education, training, and experience, the ALJ recognized and "accept[ed] her as an expert in hospice care." *Id.* (citing Vol. V at 4930). At the hearing, the ALJ asked Dr. Ferguson beneficiary-specific questions, and Dr. Ferguson would summarize the voluminous medical records to provide the answers and also to provide any further

explanation as necessary. Dr. Ferguson's oral testimony identified what was *already* part of the record and was not additional evidence.

Indeed, the Magistrate Judge found that "the [ALJ's] decision failed to properly consider all of the physicians' certifications and opinions, including the testimony provided by Dr. Ferguson at the ALJ hearing, *in the context of the medical record*." R&R at 35, 46–52 (emphasis added). As explained by the Magistrate Judge, the ALJ's decision did not address the ALJ's exchanges with Dr. Ferguson, many of the records Dr. Ferguson highlighted, or her explanation accompanying those records. In the R&R, the Magistrate Judge provides the example of comorbidities, where the ALJ would typically ask Dr. Ferguson about a beneficiary's comorbidities, and Dr. Ferguson would then identify the comorbidities in the medical record and explain whether those comorbidities affected the terminal prognosis. *Id.* at 48–49. As addressed in the R&R, the ALJ's decision neither acknowledged nor rejected these exchanges and just repeated the same denial from the reviewers that there was insufficient clinical information to support comorbidities that affected each beneficiary's prognosis. *See id.* The Magistrate Judge noted this pattern with other clinical factors and data points in the medical records—that the ALJ would ask Dr. Ferguson to respond to a reviewer's comment or beneficiaries' declines documented in the medical records, only to ignore that detailed testimony and medical records in concluding "the documentation submitted did not support that the beneficiary met the Medicare criteria" or similar. *Id.* at 49–51.

In its underlying briefing, the Secretary did not argue, as it now does for the first time in its objections,[1] that the ALJ need not consider Dr. Ferguson's oral testimony as "evidence."

---

[1] In its response, Hospice asserts the Secretary did not raise this legal issue before the Magistrate Judge, and as such, this argument is waived. Docket No. 34 at 2 (citing *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998)). It is clear that litigants may not use the Magistrate Judge as a "mere sounding-board." *Freeman*, 142 F.3d at 852. It is also clear, however, that the district court

Instead, the Secretary argued that the ALJ was not required to recite Dr. Ferguson's testimony, or the information in the medical records, verbatim. Docket No. 19 at 30; *see also id.* at 32 (stating the ALJ properly considered Hospice's expert witness testimony and "carefully quoted and cited to Dr. Ferguson's testimony" throughout the decision). As the Magistrate Judge noted, that may be true, but the ALJ's failure to substantively address any of Dr. Ferguson's beneficiary-specific opinions, which relate specifically to the question of the reasonableness and necessity of the beneficiaries' hospice care, was improper. R&R at 52; *Cumerland*, 2017 WL 1047255, at *10 ("[T]he lack of any discussion in the [] decision of [the expert's] opinions leaves the court to speculate as to precisely how it treated them and why, and precludes the court from meaningfully determining whether substantial evidence supports the [] decision."). The objection does not dispute that finding, which, after a *de novo* review, the Court finds is correct.

The Court finds the Secretary's first objection to be without merit.

## C.    Second Objection

In his second objection to a footnote in the R&R, the Secretary asserts the Magistrate Judge erred in addressing the validity of the physician certifications because the validity of the physician certifications was not addressed by the ALJ. Docket No. 32 at 2 (citing R&R at 73 n.25). According to the Secretary, "[w]hile the physician certifications were determined to be invalid at the first and second levels of review—due to an alleged failure to explain how the clinical findings from the face-to-face visit supported a terminal prognosis—the ALJ's findings and conclusions were limited to [Hospice's] failure to meet documentary requirements in support of physician certifications. *Id.* at 2–3 (citing Vol. 1 at 229–70). The Secretary further argues Hospice did not

---

has wide discretion to consider and reconsider the Magistrate Judge's recommendation, which can even include consideration of newly-proffered evidence not presented to the Magistrate Judge. *Id.* Therefore, the Court considers the Secretary's first objection.

raise the issue of the validity of the physician certifications before the ALJ or the Council. *Id.* at 3.

As an initial matter, it is undisputed that physician certifications are a requirement for hospice coverage. *See Ambercity Hospice, Inc. v. Azar*, No. EDCV 19-00938-CJC (KKx), 2020 WL 6937831, at *2 (C.D. Cal. Oct. 19, 2020), *aff'd sub nom. Ambercity Hospice, Inc. v. Becerra*, No. 20-56242, 2021 WL 4924750 (9th Cir. Oct. 21, 2021) (listing a physician "certification that the individual is terminally ill" as one of the requirements for reimbursement of hospice services); *see also* 42 C.F.R. § 418.200. The ALJ's decision notes that if a beneficiary has an attending physician, the attending physician certifies that the beneficiary is terminally ill based on: "(1) the primary terminal diagnosis, (2) other health conditions, related and unrelated to the terminal condition, and (3) current clinically relevant information supporting all diagnoses." Vol. I at 230. The ALJ then described in detail the requirements for a written certification and recounted how Hospice made arguments at the hearing specific to the physician certification requirements and to how the narratives at issue in this case met all requirements and should be approved. *Id.* at 231–232. Hospice did indeed raise the propriety of the physician certifications at both the ALJ and the Medicare Appeals Council levels of review. Docket No. 34 at 3 (citing Docket No. 1-2, § 3); *see also* Vol. V at 4946:4–20 (Hospice pointing out there are no requirements in the guidance, the regulation, or the statute that actually prescribe the type of clinical information that the certifying physicians must address).

In the footnote that the Secretary objected to, the Magistrate Judge limited his finding on validity of the physician certifications "[t]o the extent that any alleged technical issues with the physician narratives were a basis for denial" for the ALJ. Docket No. 31 at 73, n.25 (emphasis added). As suggested by that language, it was unclear to the Magistrate Judge whether the ALJ

considered the technical validity of the physician certifications along with their substance, and the Magistrate Judge only made his finding to the extent she had. *Id.*; *see also id.* at 23, n.7. The confusion continues with the Secretary's second objection. *See* Docket No. 32 at 2–3 (the Secretary first claiming the ALJ did not consider the validity of the physician certifications but then stating on the very next page that "the ALJ's findings and conclusions were limited to HOET's failure to meet documentary requirements in support of physician certifications,"[2] conclusions which inherently involve the ALJ's consideration of physician certifications).

What is clear is that the ALJ considered the physician certifications throughout her decision.[3] *See, e.g.*, Vol. I at 236–237. The Secretary conceded as much in his underlying briefing. *See* Docket No. 19 at 31 ("The ALJ considered all pertinent evidence, including physician certifications and witness testimony."). The "Issues" that the ALJ considered are broadly defined: Whether the services at issue meet Medicare hospice coverage criteria . . . ." Vol. I at 230. The ALJ's conclusion for each beneficiary also reflects this broad scope of review. *See, e.g.*, Vol. I at 237 ("I find that the evidence submitted does not meet Medicare coverage criteria for the hospice

---

[2] Before considering the ALJ's eligibility determinations, the Magistrate Judge noted in a footnote that the ALJ's decision suggested there was insufficient documentation to support certain beneficiaries' terminal prognoses; however, the suggestion was inadequately explained. Docket No. 31 at 23 n.7. According to the Magistrate Judge, the decision's lack of comment regarding the sufficiency of the physician narratives suggested the only remaining basis for denial of the beneficiaries' claims is an alleged lack of clinical eligibility for hospice services. *Id.* The Magistrate Judge limited his analysis to that issue. The Secretary did not dispute this approach in his objections, but only objects to the Magistrate Judge making a finding on technical validity of the physician certifications to the extent the ALJ did so as well.

[3] The Court notes that while the ALJ may have considered the physician certifications enough to warrant the Magistrate Judge making the finding that the Secretary objected to (R&R at 73 n.25), she did not properly consider them enough to pass the "substantial evidence" standard. *See, e.g.*, R&R at 41.

services provided by the appellant to J.C. over the dates under review such that this decision is unfavorable for the appellant.").

Ultimately, the Secretary's attempt to distinguish between whether the ALJ considered the physician certifications' technical validity or documentary requirements is irrelevant for his objection. The Secretary's objection is that the Magistrate Judge erred in addressing something the ALJ did not address, but the Magistrate Judge carefully limited the application of his finding to the extent of what the ALJ considered, noting that his R&R focused on "the only remaining basis for denial of the beneficiaries' claims"—the "lack of clinical eligibility for hospice services"— because "it [was] unclear whether the ALJ upheld, overturned, or even considered the[] technical issues [of validity of physician certifications] raised at a lower level of appeal." R&R at 23 n.7.

Further, the Secretary's second objection concerns one statement contained in a footnote, which is part of the Magistrate Judge's alternate discussion regarding the limitation of liability and waiver. Docket No. 32 at 2. The aspects of the Magistrate Judge's footnote that are directed to his alternative analysis regarding the limitation of liability and waiver provisions of the Act (*see, e.g.*, R&R at 67) does not undercut the strength of the R&R's overall reasoning, much less the reasoning provided in the pertinent section regarding the ALJ's determinations as to eligibility.

The Court finds the Secretary's second objection to be without merit.

### D.    Third Objection

In his third objection, the Secretary asserts the Magistrate Judge erred in applying CMS 93-1 to hospice review regime to conclude that the ALJ erred in failing to give more weight to the physician certifications. Docket No. 32 at 3–4. In response, Hospice asserts this "is a misstatement

and oversimplification of the Magistrate's use of CMS 93-1." Docket No. 34 at 4. The Court agrees.

The Secretary is correct that failure to follow CMS 93-1 in the hospice context is not fatal. The R&R itself acknowledges CMS 93-1 is "not controlling." R&R at 43. However, as further explained in the R&R, "CMS Ruling No. 93-1 specifically provides that although a treating physician's determination is not given presumptive weight, it is to be evaluated in the context of the entire record." *Id.* (citing *Maxmed Healthcare, Inc. v. Burwell*, 152 F. Supp. 3d 619, 639 (W.D. Tex. 2016) (quoting CMS Ruling 93-1 as stating that "if the medical evidence is inconsistent with the physician's certification, the medical review entity considers the attending physician's certification only on a par with the other pertinent medical evidence"); also citing *O'Neill v. Azar*, No. 18-CV-53-FPG, 2019 WL 4686340, at *4 (W.D.N.Y. Sept. 26, 2019)).

The Secretary asserts the text of CMS Ruling 93-1 states that it concerns the weight to be given to a treating physician's opinion in determining inpatient hospital and skilled nursing facility care and does not endorse the application of the "treating physician rule to those types of services that are not discussed in this Ruling." Docket No. 32 at 3. In the R&R, the Magistrate Judge made it clear that the "treating physician rule" does not apply to the hospice coverage claims in this case. *See* R&R at 42 ("There is no presumption that a treating physician's determination is subject to any greater weight in the Medicare context."). According to the Magistrate Judge, even though controlling weight need not be given the opinions of treating physicians, such opinions are nevertheless entitled to consideration on a Medicare determination, particularly if there is no physician evidence to the contrary. *Id.* (citing *Cumerland*, 2017 WL 1047255, at *9 (citing *Ridgely v. Sec'y of Dept. of Health, Ed. and Welfare of U.S.*, 475 F.2d 1222, 1224 (4th Cir. 1973) (holding the Secretary's decision was not supported by substantial evidence where little or no significance

was attached to a treating physician's opinion with no evidence in the record to refute it); *Exec. Dir. of Office of Vermont Health Access ex rel. Carey v. Sebelius*, 698 F. Supp. 2d 436, 441 (D. Vt. 2010) ("Thus, caselaw requires ALJs to give some extra weight to a treating physician's opinion, or supply a reasoned basis for declining to do so."); *Bryan v. U.S. Sec'y of Health & Human Servs.*, 758 F. Supp. 1092, 1097 (E.D.N.C. 1990) ("Where the level of care is at issue, the attending physician's opinion as to the level of care required by a patient's needs ordinarily is given great weight if there is no evidence to the contrary."); *Kuebler v. Sec'y of U.S. Dep't of Health & Human Servs.*, 579 F. Supp. 1436, 1440 (E.D.N.Y. 1984) ("While the opinion of Dr. Urist, the attending physician, is not binding on the Secretary, where there is no direct conflicting evidence his decision has great weight. . . . Failure to give the treating physician's opinion due weight and regard severely undermines the support for the Secretary's findings.")). With the exception of *O'Neill*, 2019 WL 4686340, at *4, the Secretary does not address any of these cases in his objections.

According to the Secretary, "*O'Neill* spoke of CMS 93-1 in the context of hospital and skilled nursing facility (SNF) review cases, not hospice review." Docket No. 32 at 3. However, that does not undermine the Magistrate Judge's conclusion that the ALJ decision failed to give the treating physicians' opinions due consideration in the context of the entire record or supply a reasoned basis for declining to do so.[4] The Magistrate Judge's mention of CMS Ruling 93-1 is not dispositive of his decision, nor is his reliance on a nonbinding, but instructive, authority improper. *See Arnold v. W.D.L. Invs., Inc.*, 703 F.2d 848, 851 (5th Cir. 1983) (courts may look to nonbinding

---

[4] According to the Magistrate Judge, even if the ALJ were to have specifically found that certain medical evidence is inconsistent with the certification(s), the ALJ would have still been required to consider the certification(s) "on a par with the other pertinent medical evidence." R&R at 45, n.10 (citing *Maxmed*, 152 F. Supp. 3d at 639 (quoting CMS Ruling 93-1)).

sources from relevant agencies which "represent informed and persuasive authority . . . for guidance"). As urged by Hospice, the Magistrate Judge included this source as **another** example, in addition to the numerous cases cited above, of how "although a treating physician's determination is not given presumptive weight, it is to be evaluated in the context of the entire record." Docket No. 34 at 4–5 (citing R&R at 42–43). The Magistrate Judge's discussion of CMS Ruling 93-1 was only two paragraphs of the R&R's 12-page analysis of the physician certifications.

What is more, this objection concerns only part of the first of the four errors that the R&R identifies in the ALJ's determinations as to eligibility: that "(1) the decision failed to properly consider all of the physicians' certifications and opinions, including the testimony provided by Dr. Ferguson at the ALJ hearing, in the context of the medical record." R&R at 35. The R&R explained that "[w]hile any one of these [four] errors standing alone would not necessarily result in a recommendation of reversal, [] the combined nature of the errors in this case" would result in such a recommendation. R&R at 35. Thus, even if the Secretary's third objection is correct, that does not mandate reversal, as the R&R identified three other errors in the ALJ's decision.

The Court finds the Secretary's third objection to be without merit.

E.    **Fourth Objection**

In his fourth objection, the Secretary asserts the Magistrate Judge erred by applying a "burden-shifting framework not contemplated by Congress." Docket No. 32 at 4. According to the Secretary, if the decision is supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Id.* The Secretary argues as follows:

> The effect of the Magistrate's treatment of the physician's certifications as expert testimony and his conclusion that the ALJ was required to accord deference to the physician certifications, absent countervailing expert testimony by CMS—at a hearing in which CMS's participation itself is not required—was to remove the

> burden Congress squarely placed on providers and shift it to the government to rebut a presumption of validity. Dkt.31 at 37, 43-44, 54-55. Such a burden shifting framework is especially inappropriate within the context of the Medicare program's nature as a pay-first, ask-later system in which Medicare providers create and maintain the documents and information necessary to verify the validity of claims.

*Id.* at 5.

The Magistrate Judge did not treat the physicians' certifications as "expert" testimony. Instead, the Magistrate Judge concluded the ALJ failed to properly consider the physicians' certifications (as well as the oral testimony of "expert" witness Dr. Ferguson) in the context of the entire record. Docket No. 31 at 35–47. In doing so, the Magistrate Judge discussed numerous errors in the ALJ's decision, one of which was a lack of explanation as to why the physicians' certifications were inconsistent with the evidence of record. The requirement for the ALJ to provide reasons to support her conclusion is necessary for judicial review and well-established in caselaw. *See, e.g.*, *Cumerland*, 2017 WL 1047255, at *10 (citing *Heart 4 Heart, Inc. v. Sebelius*, No. 13-CV-03156, 2014 WL 3028684, at *7 (C.D. Ill. July 3, 2014) ("While an ALJ, and by extension the MAC, is not required to evaluate every piece of evidence in a case, the ALJ must sufficiently articulate his assessment of important evidence so the Court can 'trace the path' of the ALJ's reasoning.")). Holding the Secretary to that standard is not shifting the burden.

Nor did the Magistrate Judge conclude "that the ALJ was required to accord deference to the physician certifications, absent countervailing expert testimony by CMS." Docket No. 32 at 5. As discussed at length in Hospice's underlying motion, the framework surrounding the Medicare hospice benefit is complex and nuanced. *See* Docket No. 16 at 2–8; *see also* Docket No. 34 at 5. It requires physician certifications, 42 U.S.C. § 1395f, and, if a Medicare contractor such as a ZPIC or UPIC audits and denies a provider's claim(s), the provider may contest the denial(s) through an administrative appeals process that ultimately concludes with judicial review by a federal district court. *See* 42 C.F.R. §§ 405.900– 405.1140; *see also* 42 C.F.R. §§ 405.1000–405.1058. At the ALJ

hearing, "CMS or a contractor may file position papers, submit evidence, provide testimony to clarify factual or policy issues, call witnesses or cross-examine the witnesses of other parties." 42 CFR § 405.1012(c)(1).

While the Secretary notes that "CMS's participation [in the ALJ hearing] itself is not required" (Docket No. 32 at 5), if CMS chooses not to participate, then there is no countervailing expert testimony for an ALJ to rely on. R&R at 54 (citing *State v. Jimenez*, 160 Idaho 540, 544 (Idaho 2016) (noting "[t]here is a difference between drawing an adverse inference and recognizing the lack of evidence" and that where defendant was not required to, but could have presented evidence, "the court could certainly take into consideration the lack of such evidence")). As urged by Hospice in its response, the Secretary cannot now claim that the Magistrate Judge is inventing a new "burden-shifting framework" because it regrets its decision to not participate in the ALJ hearing. Docket No. 34 at 6.

The Court finds the Secretary's fourth objection to be without merit.

### F.      Fifth Objection

In his fifth objection, the Secretary argues that the Magistrate Judge altered the legal standards for determining whether a provider is eligible for a limited waiver under the Act. Docket No. 32 at 5.

#### 1.      Hospice's Burden on Waiver

According to the Secretary, rather than adhere to the existing standard for waivers, the Magistrate Judge "placed the burden on CMS to establish that it provided [Hospice] with manuals, bulletins and written guidelines and which specific materials were provided in order for the government to apply the plain language of" 42 C.F.R. § 411.406. *Id.* at 6 (citing R&R at 71). The Secretary further asserts that the "result of adopting the Magistrate's approach to waiver determinations would be catastrophic to the Medicare program. Providers, instead of being

presumed to have knowledge and familiarity with hospice statutes, regulations and policies, would instead be presumed to be innocent providers." *Id.* at 7.

To be clear, the Magistrate Judge's determination on limitation of liability and waiver was an "alternative finding." R&R at 67 (finding that even "without considering the ALJ's ultimate determinations that Medicare coverage requirements for the hospice services at issue were not met, Hospice is entitled to payment for any non-covered services pursuant to the limitation and waiver provisions of the Act [under the alternative finding]."). Even if this aspect of the Secretary's fifth objection is correct, it would not mandate reversal.

The Magistrate Judge did not place the burden on CMS for this alternative finding, but on Hospice. The Magistrate Judge decided Hospice met its burden based on the "eleven different physicians signed certifications of terminal illness based on their clinical judgment" and Hospice's expert testimony from Dr. Ferguson that "the beneficiaries were properly certified for hospice based on the clinical conditions of the patients documented in the extensive medical records." *Id.* at 74. Rather than place any burden on CMS, the Magistrate Judge instead noted "[t]here was little citation to the medical record to contradict Hospice's findings." *Id.*

With respect to Hospice's burden, the Magistrate Judge concluded that Hospice "ma[de] a pretty good case for the reasonableness of its belief that the beneficiaries' hospice eligibility was necessary[il]y based on the reasonable clinical judgment of its skilled hospice physicians." *Id.* at 73–74 (citing *Caring Hearts*, 824 F.3d at 970, 972; also citing *Prime Healthcare Servs.-Garden Grove, L.L.C. v. Burwell*, No. SACV1700347JVSPLAX, 2018 WL 1309922, at *8 (C.D. Cal. Jan. 12, 2018)). As urged by Hospice, the complexity of hospice prognostications supports the Magistrate Judge's conclusions. Docket No. 34 at 7. This is not a case where a beneficiary had only one clinical diagnosis or where CMS provided clear coverage guidance to the provider.

Rather, a hospice physician determined that each patient was "terminally ill" based on a constellation of diagnoses and conditions. Moreover, as the Magistrate Judge noted, "the clinical conditions of the patients [were] documented in the extensive medical record." R&R at 74. The Magistrate Judge also found that "CMS's pronouncements and the LCDs [i.e., Local Coverage Determinations developed by CMS contractors] repeatedly acknowledge the complexity of prognosticating a terminal illness, stating there are no clinical 'criteria' for determining a terminal illness and making clear that the LCD guidelines are just one pathway to establishing a terminal prognosis. . . ." *Id.* at 72.

In light of the evidence that Hospice presented to meet its burden, the R&R describes that there was not countervailing evidence showing how Hospice would have been put on constructive notice that these particular beneficiaries were not terminally ill, other than a passing reference to certain manuals, bulletins, and/or written guidelines. R&R at 71–75; Vol. I at 269. Nothing in the R&R or Hospice's motion suggests removing the presumption that providers have knowledge and familiarity with hospice statutes, regulations, and policies. But the issue remains that the ALJ conclusorily stated, in a few dozen words, that Hospice did not qualify for limitation or waiver. This cannot pass the "arbitrary and capricious" standard that the Magistrate Judge used, or the "substantial evidence" standard under § 405(g). R&R at 68–75. Although the Secretary attempted to "fill the gap" in its motion by citing Hospice Care Amendments, 70 Fed. Reg. 70532-01 and others, the Magistrate Judge correctly stated these regulations were not referenced in the ALJ's decision. *Id.* at 72–73 (citing *Caring Hearts Pers. Home Servs., Inc. v. Burwell*, 824 F.3d 968, 974 (10th Cir. 2016) (stating that in administrative law the post-hoc rationalizations of counsel may not provide grounds for sustaining an agency decision, only those grounds cited in the agency's order may)).

The Secretary's argument presents a false premise—that under the Magistrate Judge's approach, any hospice provider can qualify for limitation or waiver if it was actually unaware of the statute, regulation, or policy that was relied upon to deny coverage. The Secretary has failed to support that view in its briefing, at the hearing, or in the objections—nothing in the R&R stands for the proposition that "all but those involved in willful fraud" would be entitled to recoupment waivers as the objections contend. Docket No. 32 at 7. Instead, the Magistrate Judge correctly rejected the extreme under the Secretary's proposed approach—that the only providers eligible for waiver or limitation are those who were improperly denied coverage on statutes, regulations, or policies that were not in effect at the time of the coverage decision. R&R at 70. The Secretary has presented no logical or legal reason to limit waiver or limitation of liability to that scenario when the law already conditions limitation of liability (§ 1395pp) and waiver (§ 1395gg) on a provider's reasonableness. R&R at 68–69 (collecting authorities that explain that § 1395pp is limited to when the provider "did not know, and could not reasonably have been expected to know," and § 1395gg is limited to when the provider exercised "reasonable care"); *see* Docket No. 19 at 47–48.

### 2.    The APA's Application to Waiver Determination Review

Finally, the Secretary asserts the Magistrate Judge erred in using the APA's arbitrary and capricious standard in his alternative consideration of the ALJ's waiver determination. Docket No. 32 at 7. As noted in the R&R, the parties referenced two different standards of judicial review in their underlying briefing: the scope of review set forth in 42 U.S.C. § 405(g) and the "arbitrary and capricious" standard from the APA. R&R at 14. Noting the Fifth Circuit has not resolved whether the court reviews issues in a Medicare case for substantial evidence or under the APA's arbitrary and capricious standard, *id.* at 14 n.3, the Magistrate Judge applied the substantial evidence standard under § 405(g) to the ALJ's findings that the services at issue did not meet

Medicare hospice coverage requirements and the APA's arbitrary and capricious standard to the Secretary's conclusion that Hospice is not excused from liability. *Id.* at 15.

The Secretary asserts the Fifth Circuit has resolved the issue. Docket No. 32 at 7 (citing *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). In that case, which involved the government's liability for up to 30 days of skilled nursing services available under the Medicare program, the Fifth Circuit stated as follows:

> Morris contends that the standard of review is found in the Administrative Procedure Act ("APA"). But the estate cites *Hennepin County Medical Center v. Shalala*, 81 F.3d 743 (8th Cir.1996), which did not arise from an individual's appeal of a Secretary's denial of benefits under 42 U.S.C. § 1395ff(b). *Hennepin* instead involved a provider's appeal under 42 U.S.C. § 1395oo(f)(1) for reimbursement of unrecovered expenses incurred by Medicare patients.[omitted footnote] As § 1395oo(f)(1) does not incorporate § 405(g), *Hennepin* is inapposite. The § 405(g) standard controls.

*Id.* at 745.

In the omitted footnote, the Fifth Circuit referenced, without discussion, a Fifth Circuit case that also uses the APA standard of review in the Medicare provider context. *Id.* at 745 n.2 (citing *Harris County Hosp. District v. Shalala*, 64 F.3d 220 (5th Cir. 1995)).

In the decades since *Morris*, the Fifth Circuit has not definitively resolved whether the court reviews issues in a Medicare case such as this one for substantial evidence or under the APA's arbitrary and capricious standard.[5] *Dominion Ambulance, L.L.C. v. Azar*, 968 F.3d 429, 432–33 (5th Cir. 2020) ("We have not resolved whether we review factual issues in a Medicare

---

[5] Other circuits appear to have resolved this issue, using the substantial evidence standard to review matters of fact. *See, e.g.*, *Almy v. Sebelius*, 679 F.3d 297, 302 (4th Cir. 2012); *Ridgely v. Sec'y of Dep't of Health, Ed. & Welfar*e ("*Ridgely I*"), 345 F. Supp. 983, 988 (D. Md. 1972), *aff'd sub nom.*, 475 F.2d 1222 (4th Cir. 1973) (noting the court must apply the "substantial evidence" test to the administrator's findings of fact but finding there is no binding effect upon a reviewing court which must be given to conclusions of law reached by an administrative agency); *Russell v. Sebelius*, 686 F. Supp. 2d 386, 403–04 (D. Vt. 2010) (stating findings of fact made by the ALJ "are conclusive when supported by substantial evidence . . . , but are not conclusive when derived by ignoring evidence [or] misapplying the law . . . .").

case for substantial evidence or under the [APA's] arbitrary and capricious standard."); *Galindo v. Burwell*, No. CV M-16-257, 2017 WL 10309904, at *8 (S.D. Tex. Sept. 7, 2017), *report and recommendation adopted*, No. CV M-16-257, 2018 WL 4689610 (S.D. Tex. Sept. 28, 2018) ("The Fifth Circuit has not decided the exact issue of whether the appropriate standard of review in cases such as these is confined to 42 U.S.C. § 405(g) . . . . [or] under the APA's arbitrary and capricious standard") (citations omitted). Notably, in two different cases wherein the parties disagreed as to the appropriate standard of judicial review, the Fifth Circuit assumed for the sake of argument that the APA's arbitrary and capricious standard applied over § 405(g) and noted the standard of review "probably ma[de] no difference." *Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257, 261 (5th Cir. 2017); *Maxmed Healthcare, Inc. v. Price*, 860 F.3d 335, 340 (5th Cir. 2017); *see Dominion*, 968 F.3d at 433. In *Morris*, the case relied upon by the Secretary, the Fifth Circuit also stated, at the outset, that "[t]he outcome of the case d[id] not depend upon the standard employed by the court to review [the] decisions concerning individual patients;" however, because the appellant disputed the standard, the court began by articulating it. *Morris*, 207 F.3d at 745.

In the absence of clear guidance from the Fifth Circuit, and considering the parties' references to both standards without explanation, the Magistrate Judge applied the substantial evidence standard under § 405(g) to the ALJ's findings that the services at issue did not meet Medicare hospice coverage requirements and the APA's arbitrary and capricious standard to the "alternate finding" regarding the Secretary's conclusion that Hospice is not excused from liability. R&R at 14–15, 67, 75.

This is in line with how some other courts have treated the issue of waiver or limitation of liability. *See, e.g.*, *Superior Home Health Servs., L.L.C. v. Azar*, No. 5:15-CV-00636-RCL, 2018 WL 3717121, at *3, *16 (W.D. Tex. Aug. 3, 2018) (choosing to "apply the APA's arbitrary and

capricious standard" over § 405(g) to issues of limitation of liability); *Prime Healthcare*, 2018 WL 333862, at \*10 (where § 405(g) applied, the Court still held that "[w]e may set aside the Secretary's conclusion that [Plaintiff] is not excused from liability under § 1395pp(a)(2) if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") (citations omitted); *Maximum Comfort Inc. v. Sec'y of Health & Hum. Servs.*, 512 F.3d 1081, 1088 (9th Cir. 2007) (same). The Court is not persuaded the Magistrate Judge used an inappropriate standard of review when considering the ALJ's limited liability waiver findings.

This is also in line with the citations of both of those standards by the parties in their underlying briefing. R&R at 15 n.4 (citing Docket No. 16 at 21, 23 (Hospice arguing the court must determine whether the ALJ's decision is supported by "substantial evidence" and is in accordance with correct legal principles in accordance with § 405(g)), 46 (Hospice arguing in conclusion that the ALJ's decision is "arbitrary, capricious, not in accordance with law, and unsupported by substantial evidence under the APA"); also citing Docket No. 19 at 15–16 (the Secretary referencing § 405(g) as the standard of review), 48 (the Secretary arguing "Plaintiff has not met its heavy burden of establishing that the ALJ's rejecting applicability of the limitation of liability was arbitrary and capricious")). Though the Magistrate Judge did not assert "both parties agreed that the APA applies to waiver determination review," the fact that the Secretary disputed the issue and even applied the APA standard *arguendo* may be revealing of the potential relevance of its application here. Docket No. 32 at 7, 8 n.2; *compare Angelitos Health Care, Inc. v. Becerra*, 2022 WL 981966, at \*6, n.9 (explaining that the "arbitrary and capricious" standard may apply in the present case concerning waiver or limitation of liability, but choosing to apply § 405(g) only because "the parties refer only to the § 405(g) standard") *with Baylor Cnty.*, 850 F.3d at 261

(applying "arbitrary and capricious" over § 405(g) when the parties disagreed); *Maxmed*, 860 F.3d at 340 (same).

However, even assuming the Magistrate Judge should have used the substantial evidence standard under § 405(g) in his alternative analysis regarding limitation of liability and waiver, the Court finds—similar to the Fifth Circuit in *Morris*, *Baylor*, and *Maxmed*—that the standard of review makes no difference. *See also Caring Hearts*, 824 F.3d at 971 (citing, among other cases, *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 n.4 (10th Cir. 1992) ("In our view, both lack of substantial evidence and a mistake of law would be indicia of arbitrary and capricious actions and thus may be subsumed under the arbitrary and capricious label.")). The Magistrate Judge still determined that "the ALJ [did not] sufficiently state anywhere in the decision that there was insufficient documentation to support the beneficiaries' terminal prognoses" in making its determination as to waiver. R&R at 73; *see also id.* at 75 ("The record in this case does not establish that the 'Medicare policies' eliminated Hospice's reasonable basis for believing that payment for services was correct. Rather, the record supports the opposite."). Therefore, there was no "explanation of [the ALJ's] decision that includes a rational connection between the facts found and the choice made." *Almy*, 679 F.3d at 302. For this reason, the ALJ's decision was both arbitrary and capricious and failed to meet the "sufficiency of the evidence" standard under § 405(g).

Finally, the Magistrate Judge provided this analysis as independent and "further support[]" for the Magistrate's "recommend[ation] [that] the Court reverse and remand this case for reimbursement of Hospice by the Secretary for the amounts previously recouped from Hospice for the claims [at issue]." *Id.* at 67. The other 67 pages of the R&R provide independent grounds for this determination. For that reason, this analysis, by itself, even if incorrect as to the appropriate

standard of judicial review, cannot serve as a basis for this Court to modify or set aside the Magistrate Judge's ultimate recommendation.

The Court finds the Secretary's fifth objection to be without merit.

## IV.    Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that the Secretary's objections (Docket No. 32) are **OVERRULED**. It is further

**ORDERED** that the Report of the Magistrate Judge (Docket No. 31) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that Hospice's motion for summary judgment (Docket No. 16) is **GRANTED**. It is further

**ORDERED** that the Secretary's motion for summary judgment (Docket No. 19) is **DENIED**. It is further

**ORDERED** that the Secretary's final decision for reimbursement of Hospice by the Secretary for the amounts previously recouped from Hospice for the claims for 10 beneficiaries billed under the Medicare Hospice Benefit between August 1, 2014 and June 30, 2017 is **VACATED AND REMANDED**.

**So ORDERED and SIGNED this 31st day of March, 2025.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE